[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT CT Page 9649
This is an action against an accommodation maker on a note for $360,000.00 to the plaintiff for a loan to Paul Natale Construction, Inc. $349,700.00 was paid to the plaintiff on March 14, 1991, but the plaintiff claims that the defendant owes the principal sum of $10,000.00 and unpaid interest of $59,442.28. The defendant filed two special defenses. The first special defense alleges that the parties agreed on March 14, 1991 that the plaintiff would accept less than the full amount due on the note and that the agreement was an accord and satisfaction. The second special defense alleges that the defendant has fully satisfied his obligation to the plaintiff. The plaintiff has filed a motion for summary judgment against both defenses claiming that they are legally sufficient because of 12 U.S.C. § 1823(e) and the doctrine of D'Oench, Duhme 
Co. v. FDIC, 315 U.S. 447 (1942).
A summary judgment may be granted under Sec. 384 of the Connecticut Practice Book if the pleadings, affidavits and other proof submitted with a motion show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connelly v. Housing Authority, 213 Conn. 354, 364; Bartha v. Waterbury House Wrecking Co. 190 Conn. 8, 11. A material fact is one that will make a difference in the result of the case. Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578. In determining whether there is a material issue of fact, the evidence is considered in the light most favorable to the nonmoving party. Connell v. Colwell, 214 Conn. 242, 246, 247. In deciding whether the moving party is entitled to judgment as a matter of law, the same test is applied as the one used in determining whether a party would be entitled to a directed verdict on the same facts. Connelly v. Housing Authority, supra, 364.
The defendant submitted a payoff statement from the CT Page 9650 plaintiff to the defendant's attorney. This indicates that the payoff amount was $349,700.00 and that a release of mortgage was delivered on March 14, 1991. However, a letter to the defendant from an officer of the plaintiff bank on the same date which enclosed the release stated that the release of the mortgage was given with the understanding and intent of the bank that it would pursue the defendant personally for the balance of the note, including principal and interest and collection charges. Affidavits from an employee of the Resolution Trust Corporation (RTC) which has taken over the named plaintiff for the Federal Deposit Insurance Corporation (FDIC) states that the bank records show that the note signed by Natale remains unsatisfied. Moreover, a search of the records did not disclose any written agreement between the named plaintiff and Natale as claimed in the special defenses or that any such agreement was approved by the bank's Board of Directors or Loan Committee or recorded in their minutes. Other than the unsigned payoff statement, the defendant submitted no documentary evidence or affidavit in opposition to the motion.
The defendant alleges that some discussions between the defendant and agents of Danbury Savings and Loan Association (DSL) resulted in an accord and satisfaction and that the payment made on March 14, 1991 satisfied the defendant's obligation to DSL based on a prior oral agreement between them. Both accord and satisfaction and payment can be valid defenses to an action on a note or a mortgage securing it since payment, discharge, release or satisfaction are recognized defenses at common law. Petterson v. Weinstock, 106 Conn. 436,441. Correspondence from DSL and the fact that it commenced this action in April, 1991 shows that it did not consider the action taken on March 14, 1991 as discharging the defendant's obligations to the bank. DSL was closed and the RTC was appointed receiver of its assets on July 12, 1991. At that point, any prior oral side agreement between DSL and the defendant that prior payments for less than the full amount of the principal and interest satisfied the loan and that it would not be pursued by the bank, was unenforceable against the RTC under D'Oench, Duhme Co. v. FDIC, supra, and12 U.S.C. § 1823(e).
The federal statute as a codification of prior law is controlling on this issue. 12 U.S.C. § 1823(e) provides:
CT Page 9651 No agreement which tends to diminish or defeat the interest of the [FDIC or RTC] Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution shall be valid against the [FDIC or RTC] Corporation unless such agreement —
(1) is in writing,
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 (4) has been, continuously, from the time of its execution, an official record of the depository institution.
An agreement made between a bank and a borrower that the bank will take a reduced amount in satisfaction of a debt is binding on the RTC after it takes over the bank if one of two conditions exist: (1) the agreement which reduces or defeats the interest of the RTC in an asset (such as a note) meets the four requirements in the statute, or (2) the instrument signed by the borrower is not an asset acquired by the RTC when it takes over the bank. While the payoff statement relied upon by the defendant is in writing, it is unsigned and it does not meet the other requirements in the statute, and does not amount to a written agreement signed by DSL and the defendant. There is also no proof that the agreement was kept as an official record or that any agreement was approved by the board of directors or the loan committee of DSL and that approval of an agreement is reflected in their minutes. The affidavit submitted by an officer of the RTC at the bank indicates that the four statutory requirements were not met. The claimed accord and satisfaction, if it occurred, is an "agreement" under the statute, as that term includes any conduct, scheme or arrangement whereby the banking authority may be misled. CT Page 9652 Langley v. FDIC, 484 U.S. 86, 92 (1987). The "agreement" must be on file in the bank's records for examination, and must have been executed and made a bank record contemporaneously with the acquisition of the asset, namely the making of a written record of it in addition to being approved by officially recorded action of the board or loan committee of the bank; these requirements insure careful consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms with the collusion of bank employees when a bank appears headed for failure. Langley v. FDIC, supra, 91, 92. Even if an accord and satisfaction meets the other requirements of the statute, there is a split of authority whether it can meet the requirement in subsection (2) of an agreement made contemporaneously with the acquisition of the asset by the bank. See Federal Deposit Ins. Corp. v. Manatt, 922 F.2d 486, 489 (8th Cir. 1991); Resolution Trust Corp. v. Crow, 763 F. Sup. 887, 894 (N.D. Tex. 1991).
To defeat the accord and satisfaction defense, the plaintiff must also prove that the note existed as an asset of DSL when it was taken over by the RTC. The statute does not bar the defense where no asset exists or an asset is invalid and such invalidity was caused by acts independent of any understanding or side agreement between the parties. Federal Deposit Ins. Corp. v. Nemecek, 641 F. Sup. 740, 742 (D. Kan. 1986). If the bank and the defendant reached an accord and satisfaction and settled all claims prior to the takeover of the bank, the defendant's note would have been previously extinguished when the FDIC or RTC acquired the bank's assets. Id., 743. On the other hand, the term "asset" as used in12 U.S.C. § 1823(e), means assets disclosed on the books and records of a bank when the bank was taken over, and an asset reflected in the records of the bank does not cease being an asset for purposes of the statute until payment is received or an agreement complying with the requirements of section 1823(e) is concluded. Federal Deposit Ins. Corp. v. Cover,714 F. Sup. 455, 457-58 (D. Kan. 1988). Other cases also focus upon the bank's records to determine whether the FDIC or RTC acquired an asset from the failed bank. Abrams v. Federal Deposit Ins. Corp., 944 F.2d 307, 310 (6th Cir. 1991) (oral "side agreement" to an asset does not defeat or diminish an otherwise valid obligation contained in the bank's records); Federal Deposit Ins. Corp. v. Krause, 904 F.2d 463, 466 (8th Cir. 1990) (original notes were in the bank's files, the notes had no notation that they had been paid, and the minutes of CT Page 9653 neither the board of directors nor the loan committee indicated any settlement agreement). One purpose of the statute is to allow bank examiners to rely on the bank's records in evaluating the value of its assets, and the purpose of the statute would be undercut if a debtor were allowed to show by an oral agreement that a note was subject to a condition such as a release upon partial payment. Federal Deposit Ins. Corp. v. Cover, supra, 459. The RTC is not bound by an agreement which has not been fully performed when the bank is taken over, and where documents remaining in the bank's files carry the instrument as an undischarged obligation and a bank asset, the FDIC and RTC is entitled to rely upon the records. FDIC v. Hoover-Morris Enterprises, 642 F.2d 785, 787 (5th Cir. 1981).
In this case, the letter of March 14, 1991 to the defendant shows intent not to discharge the defendant personally on the note. In addition, the continued existence of the note itself in the bank's records and files, and carrying it as a deficiency, proves that the note was an asset of the bank when the RTC took over. The payoff statement with its reference to a mortgage release was delivered at the same time as the March 14, 1991 letter to the defendant. A note and a mortgage given to secure it are separate instruments, executed for different purposes. Hartford National Bank 
Trust Co. v. Kotkin, 185 Conn. 579, 581. A release of the mortgage does not prove that the note was discharged and the debt was satisfied. A photocopy of the signed note is attached to the complaint and was submitted with the motion, indicating that it remained a bank asset when this action was started. Where an accord and satisfaction is completed, the note is usually cancelled or returned to the maker. The defendant has not raised a genuine issue of material fact to negate the existence of the note as a bank asset when the RTC acquired the bank, or to show an agreement which satisfies12 U.S.C. § 1823(e). In deciding whether the moving party is entitled to judgment as a matter of law, the court applies to the established facts the directed verdict test. Connelly v. Housing Authority, supra, 364. A release of the mortgage and a partial payment without additional evidence does not prove that the note was discharged on March 14, 1991 as a bank asset, when considered in conjunction with other undisputed facts, even if the evidence is construed favorably to the defendant.
The second special defense states that "[t]he Defendant has fully satisfied his obligation to the Plaintiff" without CT Page 9654 stating any factual or legal basis for that claim. Mere statements of legal conclusions are insufficient to defeat a summary judgment. United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 377; Wadia Enterprises, Inc. v. Hirschfeld, 27 Conn. App. 162, 170. The defendant has not pleaded any facts or produced any evidence of a recognized defense to the note which is not subject to or complies with the federal statute. The second special defense is legally insufficient.
The motion for partial summary judgment against the first and second special defenses is granted.
Robert A. Fuller, Judge
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]
CT Page 9665