[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#109)
FACTS
On September 1, 1994, the plaintiff, FGB Realty Advisors, Inc., commenced the present action seeking a foreclosure of a mortgage on property located in Washington, Connecticut, against the defendants Seven Winds Realty and Spiros Milanos. The complaint is in two counts, one directed against each defendant. On November 16, 1994, the defendants filed an answer to the complaint alleging a special defense as to both counts of the complaint. The special defense is as follows:
 1. The note that is the subject of this action was payable to the order of The First Womens Bank of New York, New York in the principal sum of $275,000.00 and required payment in full on November 23, 1992. By its maturity date, the promissory note was owned not by The First Womens Bank, but instead by First New York Bank for Business which agreed and confirmed in writing that such note could be extended an additional five years to November 23, 1997, during which time the defendants herein would pay interest only with the principal sum to be due at the expiration of the extended period in November of 1997.
 2. The plaintiff herein subsequently purchased the note and the mortgage securing it with knowledge of the foregoing agreement, but refuses to honor such agreement and instead has brought a foreclosure action notwithstanding the fact the expiration date of November 1997 has not yet arrived. CT Page 14474 Furthermore, the plaintiff has refused to accept the defendants' tender of interest due in accordance with the agreement by which the note was extended. As a result, of the foregoing, an accord and satisfaction bars plaintiff from pursuing this action; furthermore, plaintiff is estopped from pursuing this action, plaintiff seeks to foreclose this mortgage with unclean hands and is accordingly barred from the equitable relief sought.
The plaintiff filed a motion for summary judgment on May 24, 1995. As required by Practice Book § 204, the plaintiff has filed a memorandum in support of its motion for summary judgment. In accordance with Practice Book § 380, the plaintiff has also filed documents in support of its motion, including a copy of the Promissory Note and Mortgage Deed, both signed by the defendant, Spiros Milanos in his capacity as president of Seven Winds Realty (Exhibit 1 Schedules A and B respectively), the guaranty of Spiros Milanos, affidavits of Melissa Froman and Joseph A. Zebzda, the defendants' interrogatory responses regarding information relative to the alleged agreement to extend the loan, a copy of the assignment of the note and mortgage by the Federal Deposit Insurance Corporation in its capacity as receiver for the First New York Bank for Business f/k/a The First Women's Bank to Kidder Peabody Mortgage Capital Corporation by virtue of an Assignment of Mortgage dated December 21, 1993, and a copy of the assignment of the note and mortgage by Kidder Peabody Mortgage Capital Corp. to FGB Realty Advisors, Inc. dated May 27, 1994. Both assignments of the mortgage were duly recorded in Volume 127 of the Washington, Connecticut land records at pages 375 and 381 respectively.
The defendants timely filed an objection to the plaintiff's motion for summary judgment and a memorandum in opposition as well as the affidavits of Spiros Milanos and former Chairman of the Board of Directors of First New York Bank, John Catsimatisdis. The defendants filed additional documentation in support of their opposition to summary judgment, including a letter from the former vice president of First New York Bank for Business dated November 9, 1992, which indicated that the Board of Directors of the Bank approved an extension of the loan agreements and would be hiring an attorney to draft the necessary documents. The defendants and plaintiff filed supplemental memoranda and presented oral argument to this court at short calendar on November 13, 1995. With respect to the arguments presented to the court, the defendants requested that the court consider their request regarding the remedy in this case. Specifically, the defendants seek to postpone foreclosure CT Page 14475 until November 23, 1997, should the court determine summary judgment on the issue of liability in favor of the plaintiff.
The plaintiff argues that because the allegations of the complaint are either admitted by the defendants or proven by affidavits, there is no genuine issue of fact as to any of the allegations contained in the plaintiff's complaint. The plaintiff further argues that the special defense alleged by the defendants is inadequate as a matter of law. In support of this argument, the plaintiff contends that (a) the alleged modification agreement is unenforceable for lack of consideration; (b) the special defense is barred by the statute of frauds; and (c) the special defense is barred by the common law D'Oench Duhme doctrine codified at12 U.S.C. § 1823(e).
The defendants argue that FGB failed to sustain its burden of demonstrating it is the owner of the mortgage that is the subject of this foreclosure action and that the plaintiff has failed to establish that it is entitled to judgment as a matter of law.
DISCUSSION
"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988) "[S]ummary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Suarez v. Dickmont Plastics Corp.,229 Conn. 99, 105, 639 A.2d 507 (1994), quoting Practice Book § 384.
The moving party "has the burden of showing the absence of any genuine issue as to all material facts which, under the applicable principles of substantive law, entitle him to a judgment as a matter of law. . . ." (Citations omitted; internal quotation marks omitted.) Suarez v. Dickmont Plastics Corp., supra, 229 Conn. 105. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . The test is whether a party would be entitled to a directed verdict on the same facts." Id., 105-06.
The Appellate Court has summarized the obligations of the nonmovant in a motion for summary judgment: (i) the party opposing summary judgment must substantiate its claim to the contrary by CT Page 14476 showing that there is a genuine issue of material fact, and must disclose the evidence establishing the existence of such an issue; (ii) "[i]t is not enough that one opposing a motion for a summary judgment claims that there is a genuine issue of material fact; some evidence showing the existence of such an issue must be presented in the counter affidavit" (iii) "[i]t is not enough . . . merely to assert the existence of such a disputed issue . . . [instead] the genuine issue aspect requires the party to bring forward before trial evidentiary facts, or substantial evidence outside of the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred;" (iv) "[m]ere statements of legal conclusions or that an issue of fact does exist are not sufficient to raise the issue;" and (v) "[m]ere statements of legal conclusions . . . and bald assertions, without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment." (Citations and internal quotation marks omitted). Wadia Enterprises, Inc. v. Hirschfeld,27 Conn. App. 162, 166, 168-70, 604 A.2d 1339, aff'd 224 Conn. 240,618 A.2d 506 (1992).
I. Consideration
The plaintiff argues that there is no genuine issue of material fact as to the allegations of the complaint as all allegations have been either admitted or proved by the its affidavits. The plaintiff further argues that the modification agreement alleged in the defendants' special defense is unenforceable for lack of consideration. The plaintiff argues that the modification agreement lacked consideration because the defendants were already under an obligation to pay the full value of the subject note, thus the payment of the $275,000 that the defendants claim was the additional consideration paid for the extension of the loan to 1997 was nothing more than the fulfillment of a pre-existing duty. "A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do." Thermoglaze, Inc. v. MorningsideGardens Co., 23 Conn. App. 741, 745, 583 A.2d 1331, cert. denied217 Conn. 811, 587 A.2d 153 (1991). "It is an accepted principle of law in this state that when a party agrees to perform an obligation for another to whom that obligation is already owed, although for lesser remuneration, the second agreement does not constitute a valid, binding contract. See, e.g., Dahl v. EdwinMoss Son, Inc., 136 Conn. 147, 69 A.2d 562; Gruber v. Klein,102 Conn. 34, 127 A. 907; Warren v. Skinner, 20 Conn. 559. The basis of CT Page 14477 the rule is generally made to rest upon the proposition that in such a situation he who promises the additional compensation receives nothing more than that to which he is already entitled and he to whom the promise is made gives nothing that he was not already under legal obligation to give. 1 Williston on Contracts, § 130. Blakeslee v. Board of Water Commissioners, 106 Conn. 642,652, 139 A. 106. Where, however, the subsequent agreement imposes upon the one seeking greater compensation an additional obligation or burden not previously assumed, the agreement, supported by consideration, is valid and binding upon the parties. See, e.g.,Simone v. Kirschner, 100 Conn. 427, 124 A. 20." (Internal quotation marks omitted.) Brian Construction and Development Co.v. Brighenti, 176 Conn. 162, 166, 405 A.2d 72 (1978).
Based upon the above rule, the $275,000 payment made by the defendants on the August 20, 1987 note is insufficient consideration because the defendants were already obligated to pay that amount on the maturity date of the loan. As alleged in paragraph one of the defendants' special defense, and as argued by the defendants, the bank agreed to forbear from exercising its right to collect the principal due on the loan for an additional f five years provided the principal sum on an unrelated note was reduced by $275,000.[1] During the five year period the defendants agreed to pay interest only, with the principal sum to be due at the expiration of the extended period in November of 1997. The defendants state that they were under "no obligation to enrich the bank by paying interest on the outstanding principal sum due for an additional five years" and that payment of same constitutes valid consideration. (Defendants' memorandum in opposition to summary judgment p. 12.) The defendants also argue that the bank received the benefit of receipt of additional interest for a period of five years, and the detriment of postponing collection of the principal sum loaned. Also, the defendants contend that they received the benefit of postponing payment of the principal sum originally borrowed in exchange for the detriment of paying interest for an additional five year term. (Defendants' memorandum in opposition to summary judgment p. 12.)
"Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. E. Farnsworth, Contracts (1982) § 2.9, p. 89; A. Corbin, Contracts (1963) § 193, p. 188." D'Ulisse-Cupo v. Board of Directors ofNotre Dame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987). "Section 90 of the Restatement Second states that under the doctrine of promissory estoppel `[a] promise which the promisor CT Page 14478 should, expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise". D'Ulisse-Cupo v. Board of Directorsof Notre Dame High School, supra, 202 Conn. 213.
The law of promissory estoppel was recently discussed by the appellate court as follows:
"Our law is well established that any claim of estoppel must be predicated on proof of two essential elements: (1) the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and (2) the other party must change its position in reliance on those facts, thereby incurring some injury. Lunn v. Tokeneke Assn., Inc.,227 Conn. 601, 607, 630 A.2d 1335 (1993); O'Sullivan v. Bergenty,214 Conn. 641, 648, 573 A.2d 729 (1990). The party claiming estoppel has the burden of proof and whether that burden has been satisfied in a particular case is an issue of fact. Middlesex Mutual AssuranceCo. v. Walsh, 218 Conn. 681, 699, 590 A.2d 957 (1991)." Palumbo v.Papadopoulos, 36 Conn. App. 799, 801, 453 A.2d 834 (1995). In the present case, the defendant is claiming estoppel and would bear the burden of proof on that issue. However, there is no factual question to resolve because the party against whom estoppel is claimed, the plaintiff, did not finalize the documents referred to in the letter[2] of the predecessor bank that were necessary to forming a binding modification agreement. Additionally, the defendant did not change its position in reliance on the letter beyond making a payment that was already due.
In summary, the defendants, did not incur any additional detriment nor did the plaintiff receive any additional benefit. The defendants were already obligated to repay the plaintiff all of the outstanding principal upon maturity of the note. A promise to do that which one is already bound to do does not constitute valid consideration for a new agreement. Thermoglaze, Inc. v.Morningside Gardens Co., supra, 23 Conn. App. 745. Because the defendants have failed to allege or show facts which can establish valid consideration and, consequently, a valid extension agreement, the first special defense is legally insufficient for lack of consideration and the plaintiff is entitled to summary judgment as to liability only on the first two counts of the complaint. The court will, however, address the remaining grounds argued by the parties as each argument raised by the plaintiff support the CT Page 14479 granting of its motion.
II. Accord and Satisfaction
The defendants' special defense states in pertinent part "The plaintiff herein subsequently purchased the note and the mortgage securing it with knowledge of the foregoing agreement, but refuses to honor such agreement and instead has brought a foreclosure action notwithstanding the fact that the expiration date of November 1997 has not yet arrived. Furthermore, the plaintiff has refused to accept the defendants' tender of interest due in accordance with the agreement by which the note was extended. As a result, of the foregoing, an accord and satisfaction bars plaintiff from pursuing this action. . . ." (Answer and Special Defense dated November 14, 1994). "The defense of accord and satisfaction requires the defendant to allege and prove a new contract based upon a new consideration." Crucible Steel Co. v.Premier Mfg. Co., 94 Conn. 652, 656, 110 A. 52 (1920). See alsoGillis v. Gillis, 21 Conn. App. 549, 552, 575 A.2d 230, cert. denied 215 Conn. 815, 576 A.2d 544 (1990). For the reasons discussed in part I of this opinion., lack of consideration, the special defense of accord and satisfaction is invalid as a matter of law.
III. Statute of Frauds
General statutes § 52-550(a), the Connecticut version of the statute of frauds, provides in pertinent part: "No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property; or (5) upon any agreement that is not to be performed within one year from the making thereof; or (6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars."
The enforcement of the provisions alleged in the defendants' special defense is prohibited by each of the foregoing provisions of the statute of frauds. In The Glastonbury Bank and Trustcompany v. Corbett Construction Co., Inc., Superior Court, judicial district of New London at New London, Docket No. 521355 (October 15, 1992, Walsh, J., 7 CSCR 1320, 1321), the court decided that an agreement to forbear from foreclosing a mortgage involves an interest in real property and is within the purview of the statute CT Page 14480 of frauds and must be in writing.
Relying on the case of Sweeney v. Simon, 2 Conn. Sup. 109
(1935), wherein the court held that an oral extension agreement was binding on the parties as long as it was supported by valid consideration, the defendants argue that the statute of frauds is inapplicable because the alleged extension agreement was supported by valid consideration. This court has discussed the consideration issue above and found, as a matter of law, that the alleged extension agreement lacked valid consideration. Therefore, the statute of frauds applies.
The defendants argue that even if the statute of frauds applies, the statute of frauds would not render the extension agreement unenforceable. The defendants argue that the extension agreement exited by virtue of the letter dated November 9, 1992, from the former vice president of The First Bank for Business. The letter states that the Board of Directors approved the extension and that the matter was being referred to an attorney to draft the necessary modification and extension documents. Unfortunately for the defendants, the bank failed four days later and the modification and extension documents were never formalized nor finalized. The letter itself, does not indicate what the board approved and fails to provide the terms of the agreement such as the time frame of the extension. To the end, the defendant submitted the affidavit of the former Chairman of the Board of Directors of First New York Bank, John Catsimatisdis, which indicates that the extension of the loan for an additional five years was approved and that such, to the best of his belief, should be recorded in the minutes of the board meeting. This however, does not substitute for an actual agreement and would not meet the requirement of D'Oench, Duhme as will be discussed below.
The defendants also argue that their payment of $275,000 and periodic interest payments, constitutes part performance of the modification agreement and that this conduct takes the oral agreement out of the statute of frauds. The plaintiff, on the other hand, argues that the defendants' conduct can not in any way be construed as part performance.
"[T]he acts of part performance generally must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter CT Page 14481 the relations of the parties. The acts also must be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute . . . ." (Citations omitted; internal quotation marks omitted.) Ubysz v. DiPietro,185 Conn. 47, 54, 440 A.2d 830 (1981).
The defendants argue that their payment of $275,000 and interest payments is indicative of part performance. However, the defendants were already obligated to repay the entire principal balance. Consequently, the payments can be naturally and reasonably accounted for by the existence of the written promissory notes. The payments are consistent with the written promissory agreements and guaranty and therefore do not, as a matter of law, take the alleged extension agreement out of the statute.
IV. D'Oench Duhme Doctrine.
The plaintiff argues that the letter and the special defense based thereon, are unenforceable unless the defendants can establish that the letter meets the requirements of 12 U.S.C. § 1823(e) and the D'Oench, Duhme doctrine. "Both D'Oench and 1823(e) have been applied numerous times to effectuate the public policy interest in not enforcing `secret agreements' against the FDIC when it is carrying out it statutorily-mandated duties to protect depositors." Howell v. Continental Credit Corp., 655 F.2d 743, 746
(7th Cir. 1981). "The doctrine has been extended considerably by the [federal] courts since the 1942 decision;" Beighley v. FDIC,868 F.2d 776, 784 (5th Cir. 1989); and has been characterized as "a rule that today is expansive and perhaps startling in its severity." Bowen v. FDIC, 915 F.2d 1013, 1015 (5th Cir. 1990). "Fundamentally, D'Oench attempts to ensure that FDIC examiners can accurately assess the condition of a bank based on its books." Id., 1016. "The doctrine means that the government has no duty to compile oral histories of the bank's customers and loan officers." Id. Furthermore, "[t]he protections extended to the FDIC as the acquirer of the assets of a failed bank in D'Oench have been held also to apply to banks that obtain the assets of the failed bank through the purchase and assumption of agreements with the FDIC."First Federal Bank v. Realty Capitol Assoc., Superior Court, judicial district of New Haven at New Haven, Docket No. 304321 (December 9, 1993, Hodgson, J.). See also First Commerce ofAmerica v. Mr. Travel Agent, Inc., Superior Court, judicial District of Stamford-Norwalk at Stamford, Docket No. 136815 (March 28, 1995, D'Andrea, J.); FDIC v. Gilbert, 9 F.3d 393, 395, n. 2 (5th CT Page 14482 Cir. 1993); Porras v. Petroplex Sav. Ass'n, 903 F.2d 379, 381 (5th Cir. 1993); FDIC V. Newhart, 892 F.2d 47, 50 (8th Cir. 1989). For this reason, the doctrine is applicable in cases, such as the present case, where a party is seeking to enforce a mortgage acquired from the FDIC.
The letter is unenforceable against the FDIC, or an acquirer of the asset from the FDIC, under the D'Oench Duhme doctrine, which was created as a matter of federal common law by the United States Supreme Court and is often referred to as the common law counterpart to 12 U.S.C. § 1823 (e). Under D'Oench Duhme, the FDIC is entitled to rely on the official bank records of the instruments themselves setting forth the rights and obligations of the bank and its borrowers to the exclusion of any extraneous matters. SeeD'Oench Duhme Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676,86 L.Ed. 956 (1942). Agreements outside of and contradicting the official instruments in the bank's records are invalid under the D'Oench Duhme doctrine because they tend to deceive and are likely to mislead banking regulatory authorities who, in taking over an insolvent financial institution, often must review all its records virtually overnight. Langley v. FDIC, 44 U.S. 86, 108 S.Ct. 396,402 (1987), D'Oench Duhme Co. v. FDIC, supra, 315 U.S. 460.
"Pursuant to the common-law D'Oench Duhme doctrine, as codified in 12 U.S.C. § 1823(e), the defendants are barred from defending or counterclaiming in any action by the FDIC as receiver based upon any unrecorded agreement separate from the note."Federal Deposit Insurance Corp. as Receiver of Community NationalBank v. Blonder, Superior Court, judicial district of Tolland at Tolland, Docket No. 044764 (April 28, 1993, Klaczak, J.,8 CSCR 590, 591). See also Connecticut Bank Trust Co. v. Lee, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 111337 (September 4, 1992, Ryan, J., 7 CSCR 1137); DanburySavings and Loan Assn., Inc. v. Natale, Superior Court, judicial district of Danbury at Danbury, Docket No. 305410 (October 23, 1992, Fuller, J., 7 CSCR 1286). The requirements listed in section 1823(e) apply "only to defenses anchored in alleged agreements that are separate from and collateral to the instrument that the FDIC or an acquiror from the FDIC seeks to enforce." First Fed. Bank v.Realty Capitol Assoc., Superior Court, judicial district of New Haven at New Haven, Docket No. 304321 (December 9, 1993, Hodgson, J.).
The defendants have presented no evidence that any final written agreement referred to in the November 7, 1992 letter was CT Page 14483 made part of the bank's official records. Therefore, under D'Oench Duhme it is not enforceable against the plaintiff as an assignee of the FDIC.
The statute, 12 U.S.C. § 1283(e), codifying the D'Oench Duhme doctrine, provides in pertinent part: "No agreement which tends to diminish or defeat the interest of the corporation [FDIC] in any asset acquired by it under this section or 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the corporation [FDIC] unless such agreement (1) is in writing, (2) was executed by the depository institution and any person claiming and adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the Board of Directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been continuously, from the time of its execution, an official record of the depository institution." 12 U.S.C. § 1823(e).
Where an agreement fails to meet any one of § 1823(e)'s requirements it is not valid against the FDIC. Mechanics FarmersSavings Bank, FSB v. Delco Development Co., 43 Conn. Sup. 408, 422,656 A.2d 1075, aff'd 232 Conn. 598 (1993); Langley v. FDIC,44 U.S. 86, 108 S.Ct. 396 (1987); FDIC v. Mannett, 922 F.2d 486, 488 (8th Cir.), cert. denied 501 U.S. 819, 111 S.Ct. 2889 (1991); FDIC v.Krause, 904 F.2d 463 (8th Cir. 1990); FDIC v. Marley, 867 F.2d 1392
(11th Cir.) cert. denied, 493 U.S. 819, 110 S.Ct. 74 (1988). In the present case, the defendant has failed to produce documentary evidence of the agreement beyond the letter dated November 9, 1992, which does not contain the material terms of the agreement. Further, the defendants failed to rebut the plaintiff's claim that the agreement, as proposed in the November 9, 1992 letter, was never reduced to a final written agreement. The affidavit of FGB's representative, Melissa Froman, indicates that she searched the file regarding the Seven Winds loans and the files did not contain either an original or copy of any modification agreement or extension agreement between First New York Bank for Business and the defendants. (Affidavit of Melissa Froman dated October 30, 1995 at paragraph 7.)
The defendants contend that a foreclosure action is an equitable proceeding, and thus the trial court should consider all relevant circumstances in determining whether to grant the foreclosure remedy, including the fact that the FDIC appeared to CT Page 14484 recognize the letter and act in accordance with the alleged extension agreement by not foreclosing immediately. In support of the equitable arguments, the defendants contend that FGB has likewise acted in conformity with the alleged modification agreement and submitted documents including account records which indicate the maturity date of the loan was November of 1997. Connecticut has recognized accident, mistake and fraud as valid defenses to a foreclosure action. Boretz v. Segar, 124 Conn. 320,324, 199 A.2d 548 (1938). "An action of foreclosure is peculiarly equitable and the court may entertain all questions which are necessary to be determined in order that complete justice may be done between the parties." Glotzer v. Keyes, 125 Conn. 227, 231,5 A.2d 1 (1939). The court, therefore, may grant "relief to a mortgagor who can prove that equitable circumstances require withholding of foreclosure or a reduction of the stated indebtedness." Olean v. Treglia, 190 Conn. 756, 771, 463 A.2d 242
(1983). Unfortunately, however, under the federal statute, specifically 12 U.S.C. § 1283(e) and the D'Oench Duhme doctrine, equitable defenses have not been recognized. It is held to be immaterial that the borrower may have acted in good faith or that FDIC had actual knowledge of the deception. Beighley v. FDIC,
supra, 868 F.2d 784. Defenses, claims or counterclaims barred by the doctrine included, in addition to failure of consideration, D'Oench, Duhme supra, promissory estoppel, breach of fiduciary duty, breach of duty of good faith and fair dealings (Bowen v.FDIC, supra, 915 F.2d 1013; Beighley v. FDIC, supra, 868 F.2d 776); estoppel (FSLIC v. Locke, 718 F. Sup. 573 (W.D. Tex. 1989)); and all unwritten and unrecorded promises and conditions related to the signing of the note. (Estate of Rains v. FDIC, 702 F. Sup. 1520
(D. Kan. 1988)).
The Supreme Court in Langley v. FDIC, supra, 484 U.S. at 94, expressly refused "to engraft an equitable exception upon the plain terms of the statute [12 Section 1823(e)]." Other federal cases have held that the statute effectively eliminates any discretion the court might otherwise have "to balance the equities and determine whether or not an agreement can be inferred." FDIC v.Manatt, supra, 688 F. Sup. 1329, aff'd 922 F.2d 486; FDIC v. TWTExploration Co., 626 F. Sup. 149, 152 (W.D. Okla. 1985).
Additionally, the defendants contend that the FDIC's knowledge of the alleged modification agreement renders the agreement valid as against the FDIC and therefore, its assigns. "If a side agreement does not meet the requirements of § 1823(e), the FDIC's knowledge of the terms of that side agreement does not render it CT Page 14485 valid against FDIC or estop FDIC from enforcing the agreement as contained in the failed bank's records." FDIC v. MerchantsNational Bank of Mobile, 725 F.2d 634, 640 (11th Cir.). cert. denied 469 U.S. 829, 105 S.Ct. 114 (1984). Furthermore, "[i]f § 1823(e) is applicable to an agreement, it is applied regardless of any knowledge, actual or imputed, which the FDIC may have had regarding the terms of the side agreement." FDIC v. Gardner,606 F. Sup. 1484, 1488 (S.D. Miss., 1985). As stated above, the doctrine is harsh but nevertheless, the court can not simply ignore precedent.
V. Chain of Title
The argument of the defendants, that FGB has not demonstrated that it is the owner of the mortgage and note at issue, is without merit. FGB has submitted sample evidence to support the fact that it is the owner of the mortgage at issue including a copy of a certificate of amendment of the organization certificate of The First Women's Bank whereby it changed the name of the bank to The First New York Bank for Business. Further documentation was submitted to prove that The First New York Bank for Business was taken over by the FDIC which assigned the mortgage and note at issue in this case to Kidder Peabody which in turn assigned the mortgage and note to FGB.
Finding no genuine issue of material fact as to the complaint and the special defense invalid as a matter of law, this court grants plaintiff's motion for summary judgment as to liability on the plaintiff's complaint. As to the requested remedy, a law day in November of 1997, the equitable argument can not prevail and thus, the court can not grant the remedy requested by the defendants.
PICKETT, J.